[No. 2637.   Nov. 17, 1923]

## STONEROAD et al. v. BECK et al.
## ANTON CHICO LAND GRANT et al. v. BROWN et al.

### SYLLABUS BY THE COURT

1. The presumption of regularity is not sufficient to overcome the assertion by appellee of want of notice of the time of settling and signing a bill of exceptions.

2. Notice of the time of the settling and signing of a bill of exceptions to one party is not sufficient to bind another party having a separate interest in the subject-matter of the litigation.

3. Some matters alleged to have misled counsel for appellants considered, and **held** not to excuse want of notice to an interested party.

4. A transcript on appeal, made up by agreement between appellant and one appellee, in which agreement another appellee did not participate, cannot be considered for the purpose of determining the rights of the latter.

Appeal from District Court, San Miguel County; Leahy, Judge.

Suit by George W. Stoneroad and others against William P. Beck and others, in which the Board of Trustees of the Anton Chico Land Grant, Fletcher A. Catron, and others intervene. From the decree rendered, the interveners appeal. On motion to strike transcript and bill of exceptions as to intervener Catron. Motion sustained.

Andrieus A. Jones, of East Las Vegas, for appellants.

S. B. Davies, Jr., of East Las Vegas, for Board of Trustees.

C. C. Catron, of Santa Fe, for intervener Catron.

### OPINION OF THE COURT.

PARKER, C. J. On January 21, 1876, a suit in partition was filed in San Miguel county, to partition a land grant known as the Hacienda de San Juan Bautista del Ojito del Rio de las Gallinias, which is

hereinafter styled the Preston Beck grant. On June 18, 1907, the board of trustees of the Anton Chico land grant intervened in the cause, setting up a claim to a large portion of the land embraced within the exterior boundaries of the Preston Beck grant, and claiming that the two grants overlapped, but that the Anton Chico grant was prior in point of time and right to the Preston Beck grant. On October 5, 1920, Fletcher A. Catron intervened in the cause, setting up that he was interested in the matter in litigation, and had an interest in the success of the board of trustees of the Anton Chico grant, and he adopted and joined in the said intervention of the said board of trustees of the Anton Chico land grant, and adopted all of the allegations contained in its petition of intervention and its reply to the answer thereto. He further alleged that on May 15, 1918, in a suit to quiet title between the owners of the Anton Chico grant, a decree was entered in this court adjudging to one T. B. Catron a certain portion of the said Anton Chico grant, and that he by conveyance had succeeded thereto. He prayed that the court determine and adjudge that all of said tract of land in conflict between the Anton Chico grant and the Preston Beck grant, and known as the overlap between the said grants, be decreed to be a portion of the Anton Chico grant and not a portion of the Preston Beck grant, and that the title of the said board of trustees of the Anton Chico grant and of Fletcher A. Catron be quieted and set at rest, as against all other parties to the proceeding. He further prayed that the court adjudicate and decree that the said Fletcher A. Catron had acquired all of the said overlap except 36,500 acres, and that, with that exception, his title be quieted and set at rest as to any claims of any of the other parties to the proceeding.

A trial was had upon the issues in the case, and resulted in a final decree on March 18, 1921.

The court, among other things, found that the preston Beck grant and the Anton Chico grant, as sur-

veyed and patented, conflict or overlap to the extent of approximately 120,000 acres, such conflict being included within the exterior boundaries of each of said grants as surveyed and patented. It further found that all of the land in the said overlap or conflict between the said grants belongs to the town of Anton Chico, and to the board of trustees of the Anton Chico land grant, and that the claimants of the Preston Beck grant had no right, title, interest, claim, or demand therein or thereto. The court thereupon decreed that the title of the board of trustees of the Anton Chico land grant, as representatives of the town of Anton Chico, be established as against the adverse claims of all persons claiming under the Preston Beck grant, and that said parties be barred and forever estopped from having or claiming any right, title, or interest therein or thereto adverse to said board of trustees of the Anton Chico land grant, and that the latter's title be quieted and set at rest.

It is to be noted that the decree fails to establish the title of Fletcher A. Catron to a portion of the grant as against the claims of the board of trustees of the Anton Chico grant, as prayed by him in the second paragraph of his prayer. No exception was taken to the decree by Catron, and he did not appeal therefrom, relying, it is to be assumed, upon his allegation in his petition of intervention, which allegation was undenied by the board of trustees of the town of Anton Chico, that his title to his portion of the land was established by the decree of this court heretofore referred to. Claimants under the Preston Beck grant have brought the case here by appeal. The record on appeal, and the manner of its preparation, are the cause of all the controversy at this time. The record was prepared under a stipulation in the following terms:

"It is stipulated and agreed by and between the attorneys for the interveners, the board of trustees of the town of Anton Chico land grant and Fletcher A. Catron, and the attorney for the respondents in the above entitled cause that the following may constitute the record to be presented to the Su-

preme Court of the State of New Mexico in this case as the record in the case for whatever purpose it may be used in the Supreme Court of New Mexico, to wit."

Here follow the items of record and evidence which are to be embodeied in the record. The stipulation was signed by Andrieus A. Jones, attorney for respondents, and Stephen B. Davis, Jr., attorney for interveners, on April 2, 1921, and on the same day the judge of the district court, in pursuance of said stipulation, settled, signed, and sealed as a bill of exceptions, and as the record and bill of exceptions up on which the case might be heard in the Supreme Court, all the matters contained in the stipulation. On May 31, 1921, citation on appeal was issued and served upon attorneys for each intervener.

A praecipe was filed with the clerk for the record as thus made up, and the same was duly prepared and filed in this court. On February 17, 1922, Fletcher A. Catron, by his attorney Charles C. Catron, appeared and moved the court to strike from the transcript of record the bill of exceptions contained in the printed transcript on pages 71 to 225, upon the grounds that the same did not appear to have ever been filed in the office of the clerk of the district court as required by section 27, chapter 43, Laws of 1917; that the transcript fails to show that Fletcher A. Catron, or his attorney, ever received five days' notice, or any notice, of the application to the judge to sign and settle the bill, and that no such notice was in fact given; that the bill of exceptions was inadvertently and improvidently signed by the trial court under a pretended stipulation or agreement between counsel for plaintiff and counsel for the interveners, the board of trustees of the Anton Chico land grant, which stipulation was not entered into by the intervener, Fletcher A. Catron, or his counsel. Other grounds are assigned which need not be noticed. The motion further went to the entire transcript of record upon the ground that it was made up upon a stipulation of some of the parties to the case and not all, and that the same is not such a transcript as is required to be

prepared and filed by the appellate procedure act. Later the appellee Fletcher A. Catron filed a motion for a writ of certiorari, suggesting diminution of the record, which was granted. In response to the writ the court below certified up to this court an amended record which shows that neither Fletcher A. Catron nor his counsel appeared at the signing and settling of the bill of exceptions, nor did he or his counsel sign the stipulation under which the transcript upon appeal was prepared and certified by the judge. It thus appears that the appellee Fletcher. A. Catron never appeared and waived notice of the time of settling the bill of exceptions and never participated in the stipulation whereby the transcript was formulated and certified by the court.

As the record stands, it appears that the appellants and one appellee met before the court, this one appellee waiving notice as required by law and waiving all objections, and procured the court to settle and sign the bill of exceptions without notice to Catron, the other appellee. It further appears that these same parties, on the same day, presented the stipulation for the record. and bill of exceptions to the court, and procured his order certifying the same to this court as a true record on appeal, and the said Catron was not present and did not participate in the stipulation. While it does not affirmatively appear that Catron had not received notice, every reasonable intention is to that effect, as the action taken does not purport to be upon notice, but, on the contrary, purports to be taken by consent of the two parties, ignoring the appellee Catron.

[1] 1. Counsel for appellants presents several considerations in opposition ot the motion to strike the bill of exceptions. They say that there is a presumption, always to be indulged, that the lower court proceeded with jurisdiction, because otherwise it would not have proceeded at all. This will not do. All who are familiar with such matters know that the judge must, and does, rely upon the counsel in the

case for all of the procedural matters leading up to the signing and settling of the bill of exceptions. The court has a right to rely upon counsel for appellants to see to all jurisdictional matters, as it is to his interests to do so; and he may well leave such matters to the care and attention of the counsel. If counsel fails in this, it is his own fault, and his client must suffer the consequences. It is alleged in the motion to strike that no notice was had, and appellant has not attempted to make a showing that it was. It must be assumed, therefore, that notice is lacking. In this connection counsel relies upon the fact that the corrected record, certified up on certiorari, merely shows that appellee Catron was not present when the bill of exceptions was settled and signed, but does not show that he had no notice. Presumption of regularity is thereupon invoked in favor of the settling and signing of the bill. This will not do. In the face of the denial of notice, there must be some official evidence of the fact that the same was had. The court below did not certify either way on the subject, and this certificate must be present before we are authorized to determine that there was notice. No pretense is made by appellants that notice was in fact given. A word of caution to district courts, in this connection, might not be amiss. If they will, in the order settling a bill of exceptions, make a finding of fact and a recital on the subject, all difficulty will be avoided. It is a fact which the district courts are in a position to determine, and it should always be done. If an appellant fails to secure such a finding, he is derelict in his duty to both the lower court and this court, and he must suffer the consequences.

[2] 2. It is argued that notice was in fact given, or was not required. The argument is based upon the proposition that where there are several attorneys, even though they represent several interests, service upon one of them is all that is required. This proposition is so palpably unsound as to require no discussion. A bill of exceptions might be entirely

satisfactory to one party, and yet omit highly import-
ant matters necessary to the case of another party.

[3]   3. It is urged that counsel for appellants
was misled into believing that S. B. Davis, Jr., counsel
for the interveners, the Anton Chico grant commis-
sioners, was also counsel for the intervener, Catron and
there being no prejudice shown, and the time to cor-
rect the error having expired before the motion to
strike was filed, Catron should not be heard to take
advantage of the error. The proposition as to being
misled is based upon previous conduct of Catron,
counsel for the intervener Fletcher A. Catron.   The
conduct relied upon as a statement during the trial
by C. C. Catron that he had forwarded the inter-
vention of Fletcher A. Catron . to S. B. Davis, Jr.,
with request to consider same and, if satisfactory, to
file the same and serve copy on A. A. Jones, attor-
ney for appellants.   He stated that it was merely a
matter of service of the copy by Davis, representing
him, C. C. Catron.   Sen. Jones makes an affidavit
attached to the brief, in which he sets out some other
facts which he says led him to believe that Davis
represented both interveners.   There are some mat-
ters in the record which tend to contradict the at-
titude taken by appellants.   If counsel believed that
Davis represented both intervners, it was not neces-
sary to issue and serve on counsel for both inter-
veners the citation, as was done; one service on Davis
being sufficient under such circumstances.   The propo-
sition that the appellee Catron is not prejudiced seems
to be contradicted by the record.   There was intro-
duced in evidence in his behalf a stipulation between
him and counsel for appellants which does not appear
in the transcript.   Just what the stipulation covered,
we, of course, do not know; but Catron asserts in his
brief that this stipulation contained provisions which
supplied all of the proofs required of him of the own-
ership of the land claimed by him, and that conse-
quently he has suffered injustice accordingly.   Ap-
pellants seek to avoid this consequence by pointing out

that Catron applied to the court to strike out or correct the certificate of the stenographer that the transcript contained all of the evidence, which the court refused to do, thereby holding, it is argued, that the stipulation was not introduced in evidence. But this conclusion does not follow. The bill of exceptions, as made up by the stenographer, shows that the stipulation was in fact introduced in evidence, and the certificate of the stenographer as to the completeness of the transcript is clearly in error. But the court, at the time this application was made, had no jurisdiction to settle a bill of exceptions. The cause was in this court, and the time for settling bills of exceptions had long since passed. The court was correct, therefore, in refusing to act in the premises, and his action. in no sense reflected upon whether the bill of exceptions was complete or not.

[4] 4. Appellee Catron moved to strike the entire transcript. The motoin is based upon the theory that the transcript is not made up as required or authorized by any of the provisions of the statute. Chapter 43, Laws 1917, contains the provisions governing the matter. Section 23 provides what constitutes the record proper. Section 24 provides that either party may require the clerk to. prepare a transcript of the record. This section evidently requires no notice and contemplates a transcript of the entire record. Appellants evidently did not proceed under this section, as the transcript does not purport to be complete. Section 32 provides for the making up of a partial record where some point or points, not involving all of the record, are sought to be reviewed. In such a case, however, a praecipe setting forth the questions to be reviewed, and calling for such portions of the record as are deemed necessary for such review, must be filed. This section was not followed by appellants, as their praecipe sets forth no question to be reviewed, and calls for a stipulation by the counsel for appellants and one of the appellees, the order of the court thereon making it a part of the

record, the notice of appeal, and proof of service of citation. Section 30 and 31 provides for the preparation of a transcript upon appeal by agreement in. writing of the parties. These are the sections which were evidently relied on, but the trouble is that there was no agreement, in writing or otherwise, of one of the appellees, Catron. This paper, from which the transcript is made up, is, as to him, spurious and entirely lacking in the essential elements of a record upon which to review the case. If a record can thus be made up, two parties may make up a transcript, ignore a third party to the case, and defeat his rights, and he will be without redress. But it is said by counsel for appellants that it appears from what is here that the rights of appellee Catron are fully protected, and therefore the transcript should not be stricken. The answer to this proposition is simple. The certificate of the clerk does not show that the transcript is complete, but is to the effect, merely, that it contains the matter called for in the praecipe. The praecipe calls for the stipulation only, which may or may not contain all of the record necessary to the appellees' case, and, in fact, the stipulation itself shows that portions of the record were intentionally omitted. It is clear, therefore, that the transcript is incomplete, and there being no agreement on the part of Catron, there is nothing before the court upon which, in justice to him, his rights can be determined. The transcript is merely a transcript of a stipulation between two of the parties to the cause, to which the third part never agreed.

Much is said in the briefs to the effect that appellee Catron has in fact no judgment in his favor and, consequently, cannot be heard on his motion to strike; he having no interest. Be that as it may. Whatever there may be in the judgment, if anything, of value or importance to intervener, Catron, the same is now secure against modification or reversal on this appeal. As to the other appellee, in whose behalf no motion to strike has been filed, the cause will proceed to hearing on the merits.

It is indeed exceedingly regrettable to the court to reach such a result as we have in this case. A large amount of property is involved, and the case cannot be decided upon its merits as to all of the parties. But the court is powerless to avoid the plain statutory provisions in regard to transcripts on appeal, simply for the reason that it makes a hard case to turn the appellants out of court upon a procedural question.

It follows from all of the foregoing that the motion to strike the bill of exceptions and to strike the entire transcript, in so far as the rights of intervener Catron are concerned, must be sustained, and it is so ordered.

BOTTS and FORT, JJ., concur.